**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**State of West Virginia,**
**Plaintiff Below, Respondent**

**v.)  No. 23-65** (Jefferson County CC-19-2022-F-11)

**Willie Edward Belmonte Jr.,**
**Defendant Below, Petitioner**

**MEMORANDUM DECISION**

Petitioner Willie Edward Belmonte Jr. appeals the Circuit Court of Jefferson County's January 5, 2023, sentencing order entered following his convictions, pursuant to guilty pleas, for multiple counts of sexual abuse by a person in a position of trust to a minor, use of obscene matter with intent to seduce a minor, and solicitation of a minor via a computer and engaging in an overt act.[1] The petitioner claims that his guilty pleas were not entered voluntarily and that his sentences are disproportionate to his crimes. Upon our review, finding no substantial question of law and no prejudicial error, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21(c).

In January 2022, the petitioner, who was a teacher at Jefferson High School, was indicted on twenty-nine offenses related to his sexual misconduct with one of his students. The petitioner and the State entered into a plea agreement to resolve those charges, which required the petitioner to plead guilty to eight counts of sexual abuse by a person in a position of trust, three counts of use of obscene matter with intent to seduce a minor, and two counts of solicitation of a minor via a computer and engaging in an overt act. Relevant to the petitioner's arguments to this Court, six of the eight counts of sexual abuse by a person in a position of trust to which the petitioner agreed to plead guilty involved conduct that the indictment specified occurred in the summer months following the 2020 – 2021 school year. For another count of sexual abuse by a person in a position of trust to which the petitioner agreed to plead guilty, the conduct described in the indictment involved the petitioner's inducement or attempted inducement of the victim "to engage in sexually explicit conduct with the use of a ring at Jefferson High School." Regarding the two solicitation of a minor via a computer and engaging in an overt act charges to which the petitioner agreed to plead guilty, the indictment set forth that the petitioner used a computer to solicit or attempt to solicit his victim in order to engage in sexual abuse by a person in a position of trust, and he was

---

[1] The petitioner appears by counsel Jonathan T. O'Dell. The State appears by Attorney General John B. McCuskey and Deputy Attorney General Andrea Nease Proper. Because a new Attorney General took office while this appeal was pending, his name has been substituted as counsel.

alleged to have committed the crimes during the summer months.[2] In exchange for the petitioner's guilty pleas to these charges, the State agreed to dismiss the remaining charges, and each party was free to argue for any lawful sentence, including an alternative sentence.[3]

The written plea agreement set forth a factual basis for each count to which the petitioner agreed to plead guilty, expanding upon the facts outlined in the indictment. Among other facts, the plea agreement specified that the petitioner was thirty-four years old when he allegedly committed the charged crimes, that the victim was seventeen years old, that the petitioner was the victim's teacher during the 2020 – 2021 school year, and that the victim was "enrolled at Jefferson High School in the year 2021 and throughout the time of the crimes described." As to the count of sexual abuse by a person in a position of trust charging conduct involving a ring, the plea agreement provided that the petitioner "solicited [the victim] to go to a bathroom and to perform a sexual act with his wedding ring" at school, during school hours.

The parties appeared for a change of plea hearing on October 26, 2022. The circuit court announced its "understanding that we're going to go forward with the [plea] colloquy here today, and [the petitioner] would be remanded to [jail] pending sentence." The petitioner's counsel responded that that was not his understanding and that he had not "prepare[d]" the petitioner for going to jail, citing to the court's having held a plea in abeyance in a different case. The petitioner's counsel requested that the parties return on the scheduled trial date five days later for entry of the petitioner's pleas to allow the petitioner time to get his affairs in order. The State opposed, noting that it would have to spend those five days preparing for trial, as the possibility remained that the petitioner would not follow through with his guilty pleas. The petitioner, therefore, moved to continue trial. The court granted the continuance but warned that, if the plea agreement did not "go through," the court would "likely . . . revoke [the petitioner's] bond at that point in time and he will await trial from [jail] because I'm going to have concerns that he is . . . manipulating the system to basically be out as long as he can, and I'm not going to allow that to happen."

At the petitioner's plea hearing on November 1, 2022, the petitioner expressed his understanding of the maximum sentence he faced by pleading guilty and his right to have counsel prepare a defense and proceed to trial. Regarding a trial, the petitioner said he understood that he had the rights to have the State prove its case beyond a reasonable doubt, to confront witnesses, to present his own evidence, and to appeal any conviction. Further, the petitioner stated his understanding that, by pleading guilty, he was giving up those rights and giving up "any defenses [he] might have been able to put on had [he] gone to trial." The circuit court also explained to the

---

[2] Generally phrased, West Virginia Code § 61-3C-14b provides that someone over the age of eighteen who uses a computer to solicit or attempt to solicit a minor in order to engage in "any illegal act" under certain specified West Virginia Code sections and who engages in an overt act to bring him/herself into the minor's presence with the intent to engage in sexual conduct with the minor is guilty of soliciting a minor via computer and engaging in an overt act. The "illegal act" identified in the indictment was sexual abuse by a person in a position of trust to a child, which is proscribed by West Virginia Code § 61-8D-5, one of the Code sections specified in West Virginia Code § 61-3C-14b.

[3] The petitioner also agreed to be "responsible for restitution."

petitioner that "when you enter a plea of guilty what you're doing is admitting the truth of the charge as opposed to a plea of not guilty which is putting it into contest and saying it is not true." The petitioner stated that he understood, and he also said that he understood that by pleading guilty to each count, he was acknowledging "that those charges against [him] are true."

The petitioner informed the circuit court that he had received a copy of his indictment, that he had had an adequate opportunity to discuss it with his counsel, and that he was confident he understood the charges against him. The petitioner confirmed that his trial counsel "sat down with [him], talked to [him] about [his] case, talked to [him] about the strength of the State's case against [him], [and] strategies for defense." The petitioner agreed that he had received "good representation" from trial counsel, and he confirmed that no one had threatened, forced, or pressured him to plead guilty. The petitioner's trial counsel confirmed that he fully explained the essential elements of the charged offenses (and of lesser included offenses) and that he believed that the petitioner understood those essential elements. Trial counsel also stated that he believed that the petitioner understood his rights and the consequences of his pleas and that he entered the pleas voluntarily, intelligently, knowingly, and freely.

The circuit court elicited a factual basis for the petitioner's guilty pleas. The petitioner testified, "[W]hen I was employed as a Jefferson County school teacher in my position of trust, I had sexual contact with one of my students." He also testified, "I used a computer to seduce a minor who I knew was underage at least four years younger than me and brought her to my presence with the intent of having sexual contact." He added, "Over the course of a several month period in 2021 the student and I had sexual contact probably eight times roughly, . . . and two times where I contacted her and had her come to meet me for those sexual contacts." Regarding one count of sexual abuse by a person in a position of trust, the petitioner acknowledged that he solicited or asked his victim "to perform a sexual act with a ring that [he] had at Jefferson High School in May of 2021." In regard to one count of soliciting a minor via a computer and engaging in an overt act, the petitioner acknowledged that he used a computer to entice his victim to meet him at a specific parking lot to engage in a sexual act with him on one of the occasions to which he previously admitted to sexually abusing his victim as a person in a position of trust. For the other count of soliciting a minor via a computer and engaging in an overt act, he confirmed that he used a computer to entice his victim to meet him at a particular house with the intent to engage in sexual intercourse with her. This admission also corresponded to a count of sexual abuse by a person in a position of trust to which he agreed to plead guilty.[4]

The State also described in detail how it would prove the charges against the petitioner, with its proof including, among other things, data recovered from the petitioner's and the victim's phones; the victim's testimony, including her description of her relationship with the petitioner, which she would testify "started innocently but then turned sexual"; and the petitioner's employment status as a teacher, and, specifically, the victim's teacher during the 2020 – 2021 school year. The petitioner's trial counsel stated that he believed the State could put on the evidence it said it had and prove what it said it could prove: "Yes, I believe [the State] could do

---

[4] The petitioner also provided a factual basis for each of his three guilty pleas to using obscene matter with the intent to seduce a minor, but because the petitioner does not challenge the sufficiency of the factual basis laid for his pleas to those counts, we do not recount them.

that and get the convictions." The petitioner, too, agreed that if the jury heard all the State's evidence, it could find him guilty of the charges against him. The court continued, "With regard to these felony charges, would they be true?" The petitioner answered, "Yes, Your Honor."

The petitioner then pled guilty to the agreed-upon counts. The circuit court said to the petitioner, "You are leading this [c]ourt to believe that you know what you are doing, what your rights are, the consequences of your plea, and that the plea that you have entered here is free and voluntary; is that correct, sir?" He responded, "Yes, Your Honor." Consequently, the court found that the petitioner understood the nature of the offenses and the consequences of his pleas, that his pleas were made freely and voluntarily, and that there was a factual basis to support each of his pleas. The court then provided the petitioner with a written guilty plea form, asked that he review it, and instructed him to sign it "[i]f this is what you want to do." The court, however, "caution[ed]" the petitioner that he should not sign the plea form if he wanted his "day in court" and to "exercise all of the valuable constitutional rights" previously reviewed. After providing the petitioner time to examine the written guilty plea form with his counsel, the petitioner signed it, and the court adjudged him guilty of eight counts of sexual abuse by a person in a position of trust, three counts of use of obscene matter with intent to seduce a minor, and two counts of solicitation of a minor via a computer and engaging in an overt act.

At sentencing, on January 4, 2023, the petitioner's trial counsel argued for an alternative sentence for the petitioner, noting that the petitioner had accepted responsibility and sought psychological treatment, so he had "earned the ability" to be sentenced differently from a lifelong criminal. The State argued for incarceration, noting that the petitioner "knew information about [the victim's individualized education plan] and he used that to get her to be quiet about what could happen to her."[5] The circuit court sentenced the petitioner to not less than ten nor more than twenty years of incarceration for each sexual abuse by a person in a position of trust conviction, with the sentences for two counts ordered to run consecutively to one another and the remaining six to be served concurrently with each other and concurrently with the two ordered to run consecutively. The court sentenced the petitioner to thirty years of incarceration for each of his two solicitation of a minor via a computer and engaging in an overt act convictions. The court ordered that these sentences be served consecutively to one another but concurrently with the two consecutive sentences for sexual abuse by a person in a position of trust. For each of his three convictions of

---

[5] The victim provided a victim impact statement that was read during sentencing. The victim recounted that the petitioner "used [her] own vulnerabilities against [her]" and "turned [her] against [her] family and made [her] feel like they were no longer people [she] could trust to talk to." The victim's mother also chastised the petitioner for "pr[eying]" upon the victim "knowing that she had a history of emotional struggles" through his access to her individualized education plan.

The petitioner exercised his right of allocution and asked, "for forgiveness and a semblance of clemency." He reiterated that he had "accept[ed] full responsibility" and apologized to his victim for "betraying [her] trust in [him]." He apologized to the teaching profession, recognizing that "[f]or as many lives that [he] would like to think [he had] positively influenced as an educator, one negative is enough to make [his] career in its entirety regrettable."

4

use of obscene matter with intent to seduce a minor, the court sentenced the petitioner to five years of incarceration, to be served consecutively to each other and all other sentences.[6]

The petitioner now appeals from the court's January 5, 2023, order memorializing those sentences, and he raises a claim as to the voluntariness of his guilty pleas and to the proportionality of his sentences. We have previously observed that "[a] direct appeal from a criminal conviction based on a guilty plea will lie where an issue is raised as to the voluntariness of the guilty plea or the legality of the sentence." Syl. Pt. 1, *State v. Sims*, 162 W. Va. 212, 248 S.E.2d 834 (1978). To the extent the legality of the petitioner's sentence raises a question of law, our review is de novo. *See* Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995) (establishing a de novo standard of review for questions of law). With respect to the petitioner's claimed sentencing error, "unless the order violates statutory or constitutional commands," this Court "reviews sentencing orders . . . under a deferential abuse of discretion standard." Syl. Pt. 1, in part, *State v. Lucas*, 201 W. Va. 271, 496 S.E.2d 221 (1997).

The petitioner argues that his guilty pleas were not voluntarily entered because the circuit court failed to adequately explain the elements of the crimes to which he pled guilty and to elicit a sufficient factual basis to support his guilty pleas for several counts. Specifically, he argues that an insufficient factual basis was laid to support that he "engaged in or attempted to engage in" "sexually explicit conduct" with his victim for the count of sexual abuse by a person in a position of trust involving the petitioner's wedding ring.[7] He also contends that an insufficient factual basis was laid for the six guilty pleas to sexual abuse by a person in a position of trust involving acts committed during the summer months, when, the petitioner claims, he was not "actively" his victim's teacher, and his victim "drove herself to meet an adult for consensual sexual acts." He claims further that there was an insufficient factual basis for his two pleas to solicitation of a minor via a computer and engaging in an overt act because there was no showing that the attempt to solicit was to engage in an "illegal act." The illegal act charged was sexual abuse by a person in a position of trust during the summer months, so this argument, too, centers on his assertions that he was not then the victim's teacher and that the victim drove herself to meet him for consensual sex. The petitioner contends that this allegedly insufficient factual basis demonstrates both a failure on the circuit court's part to follow Rule 11 of the West Virginia Rules of Criminal Procedure in taking his plea and that trial counsel erroneously advised that the petitioner's conduct satisfied the

---

[6] The circuit court also ordered that the petitioner serve fifty years of supervised release, assessed costs, and ordered restitution.

[7] If a "person in a position of trust in relation to a child under his or her care, custody or control, shall engage in or attempt to engage in sexual exploitation of . . . a child under his or her care, custody or control," irrespective of whether the child willingly participated in or consented to the conduct, then the person is guilty of sexual abuse by a person in a position of trust. W. Va. Code § 61-8D-5. At the time the petitioner committed this crime, "sexual exploitation" was defined to mean an "an act whereby . . . [a] . . . person in a position of trust in relation to a child . . . persuades, induces, entices or coerces the child to engage in sexually explicit conduct as that term is defined in [West Virginia Code § 61-8C-1]." *Id.* § 61-8D-1(10) (2014). West Virginia Code § 61-8C-1(c), in turn, identifies ten acts, "whether actually performed or simulated," that amount to "sexually explicit conduct," and it is this element that the petitioner contends lacks a factual basis.

elements of sexual abuse by a person in a position of trust and solicitation of a minor via a computer and engaging in an overt act. He asserts that the ineffective assistance is "apparent from a review of the indictment and plea hearing transcript," and he points to counsel's misunderstanding about whether the petitioner would be remanded to jail upon entry of his guilty pleas as establishing a "pattern of incompetent advice." With final respect to the voluntariness of his pleas, the petitioner argues that the court's "threat" of revoking bail should he fail to follow through with his guilty pleas amounted to undue coercion.

Rule 11 of the West Virginia Rules of Criminal Procedure governs pleas and sets forth certain requirements for a court in accepting a guilty plea. Of the requirements set forth, the petitioner's arguments implicate primarily the court's responsibility to determine that a defendant understands "[t]he nature of the charge to which the plea is offered" and to determine the "[a]ccuracy" of the plea, which entails "making such inquiry as shall satisfy [the court] that there is a factual basis for the plea." W. Va. R. Crim. P. 11(c)(1) & (f). The petitioner bears the burden of demonstrating that his plea was not voluntarily entered. *See* Syl. Pt. 3, *State ex rel. Clancy v. Coiner*, 154 W. Va. 857, 179 S.E.2d 726 (1971) ("The burden of proving that a plea was involuntarily made rests upon the pleader.").

The record amply demonstrates that the petitioner voluntarily entered his guilty pleas. At his plea hearing, the petitioner said that he received a copy of his indictment, that he and his trial counsel discussed it, and that he was confident he understood the charges against him. Trial counsel confirmed that he had fully explained the essential elements of the charged crimes and that the petitioner understood those elements. Thus, the record reflects that the petitioner understood the nature of the charges to which he pled guilty. The record also reflects that the circuit court elicited a sufficient factual basis for the petitioner's guilty pleas. The petitioner admitted to having his victim "perform a sexual act with a ring," and masturbation is an act that constitutes "sexually explicit conduct." *See* W. Va. Code § 61-8C-1(c)(7). The petitioner also admitted to being a teacher, in a position of trust in relation to his child victim. *See id.* § 61-8D-1(13) (defining a "person in a position of trust in relation to a child" to include "any person who by virtue of his or her occupation or position is charged with any duty or responsibility for the health, education, welfare, or supervision of the child"). In contending that these admissions were insufficient, the petitioner misapprehends the circuit court's function in accepting a guilty plea. "Plea bargaining is far removed from the traditional guilt-finding process attendant to a jury or nonjury trial," and "[t]he primary purpose of a plea bargain is to avoid the factual guilt determination process." *Myers v. Frazier*, 173 W. Va. 658, 673, 319 S.E.2d 782, 797 (1984). It was not the circuit court's role to "make a formal adjudication of guilt beyond a reasonable doubt on the charge to which the defendant is willing to plead"; rather, "[t]he central role of the court in a plea bargain, insofar as the defendant is concerned, is to ascertain that the plea is voluntarily and intelligently made and that the defendant understands its consequences and the constitutional rights he is waiving." *Id.* This was done, and the petitioner, at his plea hearing, demonstrated that he understood that he was "admitting the truth of the charge as opposed to a plea of not guilty which is putting it into contest and saying it is not true" and giving up "any defenses" he may have been able to argue at trial.[8]

---

[8] In any event, it matters not that, as the petitioner claims, the victim drove herself to meet him for consensual sex because one is guilty of sexual abuse by a person in a position of trust (and solicitation of a minor via a computer and engaging in an overt act where the "illegal act" involved

6

The record also reflects that the circuit court did not coerce the petitioner to plead guilty. The petitioner has mischaracterized the court's explanation of its anticipated next steps should the petitioner not plead guilty as a "threat," as the record is clear that the court merely had concerns about the potential for the petitioner to engineer delays and remain free. Plus, in response to the court's required inquiry into the voluntariness of his guilty pleas, the petitioner denied that anyone had threatened or pressured him to plead guilty and confirmed that he wanted to plead guilty. *See* W. Va. R. Crim P. 11(d). Accordingly, we find that the court steadfastly adhered to the requirements of Rule 11, so the petitioner has not sustained his burden of demonstrating that his plea was involuntary as that claim relates to any alleged deficiencies under Rule 11.

Moving to the petitioner's argument that his pleas were involuntarily made due to the fact that he allegedly received incompetent advice from trial counsel regarding whether his conduct, in fact, satisfied the essential elements of the crimes to which he pled guilty, we have held that the "controlling test" when a guilty plea is attacked "on grounds that fall within those on which counsel might reasonably be expected to advise, is the competency of the advice given by counsel." *Sims*, 162 W. Va. at 212, 248 S.E.2d at 835, Syl. Pt. 2, in part. And to succeed in setting aside his guilty pleas on the ground that he received incompetent advice, the petitioner must show "that (1) counsel did act incompetently; (2) the incompetency must relate to a matter which would have substantially affected the fact-finding process if the case had proceeded to trial; [and] (3) the guilty plea must have been motivated by this error." *Id.*, Syl. Pt. 3, in part.

Despite the petitioner's protestations otherwise, the record is not sufficiently developed to establish trial counsel's incompetency. The petitioner's assertions that he did not understand the essential elements and that counsel provided him erroneous advice regarding the elements appear only in the petitioner's brief. But "'[a] party can not establish facts in a case by asserting them in a brief. Those are nothing more than an attorney's statements, which are not evidence.'" *State v. Benny W.*, 242 W. Va. 618, 629, 837 S.E.2d 679, 690 (2019) (quoting *City of Helena v. Whittinghill*, 219 P.3d 1244, 1248 (Mont. 2009)). Because the record is not sufficiently developed to determine whether the petitioner received effective assistance of counsel, and because "[t]he prudent defense counsel first develops the record regarding ineffective assistance of counsel in a habeas corpus proceeding before the lower court," we decline to address this facet of the petitioner's argument regarding the voluntariness of his plea. *See* Syl. Pt. 10, *State v. Triplett*, 187 W. Va. 760, 421 S.E.2d 511 (1992); *see also State v. Thomas*, No. 20-0055, 2021 WL 1110379, at *4 (W. Va. Mar. 23, 2021) (memorandum decision) (declining to address a voluntariness claim predicated on ineffective assistance due to the record being insufficiently developed).

In his final assignment of error, the petitioner argues that the circuit court's imposition of concurrent terms of incarceration rendered his sentences unconstitutionally disproportionate. The petitioner states that he should have been granted home confinement, pointing out that his victim was "over the age of consent," that she "appears to have consented to all alleged sexual acts," and that most of the crimes took place when the petitioner was not "actively" his victim's teacher.

---

is sexual abuse by a person in a position of trust) "notwithstanding the fact that the child may have willingly participated in such conduct, or the fact that the child may have consented to such conduct." *See* W. Va. Code § 61-8D-5(a).

Although this Court's proportionality standards can "theoretically" apply to any criminal sentence, in practice they are "applicable to those sentences where there is either no fixed maximum set by statute or where there is a recidivist sentence." Syl. Pt. 4, in part, *Wanstreet v. Bordenkircher*, 166 W. Va. 523, 276 S.E.2d 205 (1981). Thus, "[s]entences imposed by the trial court, if within statutory limits and if not based on some [im]permissible factor, are not subject to appellate review." Syl. Pt. 4, *State v. Goodnight*, 169 W. Va. 366, 287 S.E.2d 504 (1982).

The petitioner's sentences are within statutory limits, and he does not argue that the circuit court based those sentences on any impermissible factor. *See* W. Va. Code §§ 61-8D-5 (prescribing a sentence of "not less than ten nor more than twenty years" of incarceration for sexual abuse by a person in a position of trust to a child); 61-8A-4 (prescribing a sentence of "not more than five years" of incarceration for use of obscene matter with intent to seduce a minor); & 61-3C-14b(b) (prescribing a determinate sentence of "not less than five nor more than thirty years" of incarceration for soliciting a minor via computer and engaging in an overt act). Furthermore, the factors he does point this Court's attention to have no relevance whatsoever to the sentencing for the crimes of which he was convicted. *See id.* at §§ 61-8D-5 (criminalizing sexual abuse by a person in a position of trust in relation to a child "notwithstanding the fact that the child may have willingly participated in such conduct, or the fact that the child may have consented to such conduct"); 61-8D-1(2) (defining "child" as someone under the age of eighteen for purposes of sexual abuse by a person in a position of trust); 61-8A-1 (defining "minor" as someone under the age of eighteen for purposes of use of obscene matter with intent to seduce a minor); & 61-3C-14b(c) (defining "minor" as someone under the age of eighteen for purposes of soliciting a minor via computer and engaging in an overt act). Finally, the petitioner's citation to these irrelevant factors provides no basis from which this Court could conclude that the circuit court abused its discretion in imposing consecutive sentences instead of concurrent. *See Christopher J. v. Ames*, 241 W. Va. 822, 835, 828 S.E.2d 884, 897 (2019) (noting that unless a sentencing court exercises its discretion to impose concurrent sentences, sentences will run consecutively). Therefore, the petitioner's sentences are not reviewable under proportionality standards, and the court did not abuse its discretion at the petitioner's sentencing.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** February 11, 2025

**CONCURRED IN BY:**

Chief Justice William R. Wooton
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice C. Haley Bunn
Justice Charles S. Trump IV